1

2

3          **IN THE UNITED STATES DISTRICT COURT FOR THE**

4                    **EASTERN DISTRICT OF CALIFORNIA**

5

6    **BRAD LOPEZ,**                          )      **1:11-CV-01468 AWI-MJS**
                                              )
7                **Plaintiff**,               )      **ORDER ON MOTION TO**
                                              )      **DISMISS**
8         **v.**                              )
                                              )      (Doc No. 9)
9    **FRESNO CITY COLLEGE, DR.**             )
     **CYNTHIA E. AZARI,** in her individual  )
10   and official capacities as President of Fresno )
     City College**; DR. CHRISTOPHER**        )
11   **VILLA,** in his individual and official )
     capacities as Vice President of Student  )
12   Services at Fresno City College,         )
                                              )
13               **Defendants**.              )
                                              )
14   _____  )

15

16                          **INTRODUCTION**

17        This is a civil rights action, brought under 42 U.S.C. § 1983, by Plaintiff Brad Lopez

18   ("Plaintiff"), a tenured faculty member at Fresno City College, against State Center Community

19   College District (erroneously sued as Fresno City College) (the "District"); Dr. Cynthia E. Azari

20   ("Azari");  and Dr. Christopher Villa ("Villa") (collectively "Defendants").  The case arises from

21   student complaints regarding statements made by Plaintiff in his Health Sciences class.

22   Following an investigation, Plaintiff received a written disciplinary reprimand.  On August 31,

23   2011, Plaintiff filed a Complaint alleging claims for constitutional violations under the First and

24   Fourteenth Amendments of the U.S. Constitution, and violation of various District administrative

25   policies.  Plaintiff seeks declaratory and injunctive relief, along with compensatory and punitive

26   damages.  Defendants now move to dismiss the Complaint in its entirety.  For the reasons that

27   follow, the motion will be granted in part and denied in part.

28

1

**LEGAL STANDARD**

2      Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

3   plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A

4   dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

5   absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside

6   Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th

7   Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are

8   taken as true and construed in the light most favorable to the non-moving party.  Marceau v.

9   Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075,

10  1077 (9th Cir. 1999).  The Court must also assume that general allegations embrace the

11  necessary, specific facts to support the claim.  Smith v. Pacific Prop. and Dev. Corp., 358 F.3d

12  1097, 1106 (9th Cir. 2004); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir.

13  1994).  But, the Court is not required "to accept as true allegations that are merely conclusory,

14  unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536

15  F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th

16  Cir. 2001).  Although they may provide the framework of a complaint, legal conclusions are not

17  accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere

18  conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949-50

19  (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

20  Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not

21  alleged, or that the defendants have violated . . . laws in ways that have not been alleged."

22  Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459

23  U.S. 519, 526, 103 S. Ct. 897, 902 (1983).  As the Supreme Court has explained:

24      While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed
         factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to
25      relief' requires more than labels and conclusions, and a formulaic recitation of the
         elements of a cause of action will not do. Factual allegations must be enough to raise a
26      right to relief above the speculative level, on the assumption that all the allegations in the
         complaint are true (even if doubtful in fact).

27

28                                               2

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965-66 (2007).  Thus, to

"avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949; see also

Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; see also Weber v. Department of Veterans

Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008).

A plaintiff's allegations are taken as true, but courts "are not required to indulge

unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009)

(internal quotation omitted).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court draw the reasonable inference that the defendant is liable for the

misconduct alleged." Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a
> sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts
> that are 'merely consistent with' a defendant's liability, it stops short of the line between
> possibility and plausibility of 'entitlement to relief.'
>     . . .
>
> Determining whether a complaint states a plausible claim for relief will . . . be a context
> specific task that requires the reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not permit the court to infer more
> than the mere possibility of misconduct, the complaint has alleged – but it has not shown
> – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50.  "In sum, for a complaint to survive a motion to dismiss, the non-

conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572

F.3d 962, 969 (9th Cir. 2009).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted

unless the court determines that the allegation of other facts consistent with the challenged

pleading could not possibly cure the deficiency." Schreiber Distributing Co. v. Serv-Well

Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).

3

1

**ALLEGED FACTS**[1]

2      Plaintiff has taught at Fresno City College ("FCC") for thirty-five years.  For the last

3   eighteen years, he has been an instructor in traditional Pharmacology, Health Information

4   Technology, and Health Science classes.  The complaint alleges Plaintiff has never been

5   disciplined until the instance that is the subject of this lawsuit.  On November 4, 2009, Plaintiff

6   lectured on the role of chromosomes and heredity from both a historical and modern perspective

7   in his Health Science 1 class.  Plaintiff's lecture also consisted of a discussion on the topic from a

8   moral perspective referencing selected biblical passages.  He further assigned homework on the

9   topic: "Was Jesus haploid or diploid? State your answer and explain why."  All assigned

10  homework is optional, and failure to complete the homework would not affect students' grades.

11  During the lecture, Plaintiff asked the class why a particular DNA transcription process used

12  groups of three, and not two or four, during the process.  A student responded, "The Father, The

13  Son, and the Holy Spirit?"  Plaintiff lightheartedly answered, "that's right."  No students

14  complained to Plaintiff that they were offended during or after the class.

15      On November 5, 2009, Plaintiff lectured on human sexuality, based on the course

16  textbook and Plaintiff's own research.  The lecture included statistics on the emotional health of

17  human sexuality, sexually transmitted disease as it relates to reproduction, and consumer and

18  environmental health and how it affects homosexuality in males and females.  Later that day,

19  Student A,[2] who was not enrolled in any of Plaintiff's classes, went to Plaintiff's office.  Student

20  A quoted an unidentified female friend, who was enrolled in Plaintiff's Health Science 1 class, as

21  having been upset because Plaintiff was showing slides in class that were "homophobic and anti-

22  gay."  She was also upset about the statistics Plaintiff had presented in his human sexuality

23

24      [1]  The alleged facts are taken from the Complaint.  Because the court looks to the
   complaint's material allegations to resolve a motion to dismiss pursuant to Rule 12(b)(6),
25  additional facts set forth in the motion to dismiss and opposition brief have not been included or
   considered.
26
      [2] To respect the privacy of the students discussed in the Complaint, the Court will use
27  anonymous names.

28                                            4

1  lecture, and his references to the Bible in the November 4 class.  Student A challenged Plaintiff

2  on his class presentation and statistical references regarding homosexuality.  Plaintiff willingly

3  answered all of the student's questions, but Student A insisted Plaintiff's information was false

4  and would not listen.

5       On December 7, 2009, Student A and another student, Student B, simultaneously filed

6  grievances against Plaintiff.  Student A's grievance alleged he was approached by an unnamed

7  friend who was a student in Plaintiff's Health Science 1 class and was upset and offended by

8  Plaintiff's classroom slides, which she had perceived as "homophobic and anti-gay." The

9  grievance also alleged that the friend said Plaintiff had shown a list of facts that claimed

10 homosexuality should be "declared a mental illness," and that homosexuals "are in need of

11 counseling . . .[and] are degrading society." Plaintiff denies Student A's contentions as false

12 hearsay allegations.  Student A's grievance requested that Plaintiff "ceases all forms of hate

13 speech in his class," and give a written/oral apology to his class, and that staff at FCC should

14 attend a training on diversity.  Student B's grievance alleged "blatant disregard for separation of

15 church and state . . . and discriminatory slander toward the homosexual community."

16 Specifically, her grievance alleged upset at the "assignment on Jesus as haploid or diploid," that

17 Plaintiff "read the Bible regarding the creation of a fetus," and that Plaintiff said "that's right"

18 when a student said "The Father, The Son, and the Holy Spirit" in response to one of Plaintiff's

19 questions.  Plaintiff denied and continues to deny the allegations of "blatant disregard of church

20 and state . . . and discriminatory slander towards the homosexual community."  Plaintiff alleges

21 neither Student A nor Student B followed FCC's grievance petition procedure, but he responded

22 directly to both grievances.

23      On December 10, 2009, Defendant Villa,  FCC's Vice President of Student Services,

24 wrote to Student A "acknowledging receipt of 'your claim of sexual harassment'" and informed

25 Student A that his office would investigate the complaint. Plaintiff alleges Villa was the first

26 person to mention sexual harassment, and that the grievance filed by Student A was not a

27

28                                              5

1   complaint on the basis of sexual harassment.  Student A later submitted a formal sexual

2   harassment complaint form to FCC on February 16, 2010.  Plaintiff denies all allegations of

3   sexual harassment.

4          On February 8, 2010, the American Civil Liberties Union ("ACLU") wrote to Defendant

5   Azari, President of FCC, regarding Plaintiff's Health Science 1 class, and asked her to "act

6   expeditiously and take whatever steps are necessary" to address a perceived violation of the First

7   Amendment.  That same day, Villa requested a meeting with Plaintiff on February 10, 2010.

8   Plaintiff alleges Villa denied Plaintiff's request to review the documentation supporting any of

9   the allegations against him before the meeting, but told Plaintiff he could review them at the

10  meeting.  Plaintiff alleges he requested more time before the meeting to respond and seek

11  counsel, but was denied.  On February 10, 2010, Plaintiff and Villa met.  Plaintiff alleges he

12  again requested an extension of time to seek counsel, but Villa denied the request.  Villa then

13  asked Plaintiff to submit information regarding the student complaint he received.  Plaintiff

14  asked Villa for documentation about the student complaints, but Plaintiff alleges Villa replied

15  Plaintiff was not entitled to information as a condition for cooperation with the investigation.

16         On February 17, 2010, FCC received a letter from Student C who had taken Health

17  Science 1 with Plaintiff in the spring semester of 2007-2008, and alleged that on many days he

18  felt "hurt, intimidated, and angry" regarding what he heard in class about Jesus, creation, and

19  homosexuality.  Student C also alleged Plaintiff had said "homosexuals are an abomination,"

20  "faggots," and "homosexuality is a sin."  Plaintiff denies these allegations and alleges Student C

21  did not follow the grievance procedure required by policy.

22         On February 18, 2010, Plaintiff and Villa met again.  Villa gave Plaintiff the district

23  policies on grievances, indoctrination, and prohibition of harassment, but failed to provide FCC

24  and District policies on Academic Freedom and the statewide Academic Senate guide on critical

25  thinking adopted by FCC and the District. On February 23, 2010, Plaintiff responded to Villa's

26  request for information during the February 18, 2010 meeting and reiterated his denial of Student

27

28                                                    6

1   B's allegations.

2          On March 18, 2010, Villa sent a letter to the complaining students indicating that FCC

3   concluded that Plaintiff had violated Administrative Regulation 3430 because he had insulted

4   homosexuals by describing them as having a "mental disorder" and by suggesting psychological

5   counseling as a remedy.  Villa conceded that the District's academic freedom policy allowed an

6   instructor to interpret personal findings and communicate them "even when at variance with

7   those of other persons [and] even if at odds with other professionals in his field," but that

8   academic freedom prohibited indoctrination and the presentation of irrelevant material and that,

9   in any event, the harassment policy always prevailed over the academic freedom policy.  Villa

10  also concluded in his letter that Plaintiff had violated District Policy because teaching religious

11  material neither attained course objectives nor engaged educational principles.  Villa therefore

12  concluded that Plaintiff had engaged in religious indoctrination.  Villa was concerned that

13  reading the Bible in Health Science 1 class or assigning readings from the Bible "could subject

14  the District to legal threat for violation of the Establishment Clause and jeopardize transfers of

15  student credits to other institutions."

16         On March 24, 2010, Azari sent a certified letter to Plaintiff reprimanding him pursuant to

17  California Education Code sections 87732 and 87734 and gave him formal notice that he had

18  ninety days to correct deficiencies or face formal disciplinary proceedings.  Azari described the

19  following events:

20         "1) In front of your class you insulted gays and lesbians as 'abnormal' and in need
            of psychological counseling.
21         2) In class and in taped lectures you required the students to purchase, you taught
            religious principles from the Bible in place of established curriculum for the
22         health course.  You persisted despite student complaints, admonishments from
            your dean and comments of concern in a teaching evaluation attached hereto."
23
    The reprimand ordered Plaintiff to cease teaching religious materials and assigning readings from
24
    the Bible or other religious texts in class.
25
           On April 29, 2010, Plaintiff responded to the written reprimand and refuted that he had
26
    violated Education Code sections 87732 and 87734, District Administrative Regulations 3430
27

28                                                   7

1   and 4030, and FCC Board Policy 4030.  Plaintiff alleges he never directed abusive statements

2   toward any individual, and denied saying in any class that gays and lesbians were "abnormal" or

3   "in need of psychological counseling."  Rather, his statement was "because over 95% of the

4   population is not homosexual, for those who are 'one alternative is psychological counseling.'"

5   Plaintiff alleges he has occasionally used the Bible, the Koran, and the Talmud because they are

6   among the oldest manuscripts in existence and provide valuable historical support for safe health

7   practices.  Plaintiff alleges that relevant portions of those texts were also used to supplement and

8   enhance curriculum content and stimulate critical thinking as required by District academic

9   standards.  Plaintiff alleges he was on the Health Committee that wrote the current Health

10  Science 1 curriculum which was approved by the curriculum committee at FCC.  Plaintiff alleges

11  he limits terms relating to homosexuality to those found in medical and scientific literature and

12  textbooks.  Plaintiff alleges Villa repeatedly refused to provide Plaintiff copies of meeting notes,

13  and Villa did not make a reasonable attempt to resolve the grievances directly between the

14  students and Plaintiff.  Plaintiff alleges Villa completely disregarded all statements and

15  documents provided by Plaintiff, including favorable feedback in a December 2009 anonymous

16  student survey.  Plaintiff alleges Villa neither provided, nor did he ask the aggrieved students to

17  provide, documentation disputing facts provided by Plaintiff.  Finally, Plaintiff alleges Azari and

18  Villa disregarded the twenty-nine e-mails and letters from students and other people who had

19  learned of the complaints and wanted to vouch for Plaintiff.

20                                              **DISCUSSION**

21  A.      Eleventh Amendment Immunity

22          Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts.

23  California v. Deep Sea Research, Inc., 523 U.S. 491, 502, 118 S. Ct. 1464, 1470 (1998);

24  Edelman v. Jordan, 415 U.S. 651, 677-78, 94 S. Ct. 1347, 1362 (1974); Cook v. AVI Casino

25  Enterprises, Inc., 548 F.3d 718, 724 (9th Cir. 2008);  In re Jackson, 184 F.3d 1046, 1048 (9th Cir.

26  1999).  "The Eleventh Amendment prohibits federal courts from hearing suits brought against an

27

28                                                   8

1   unconsenting state."  Brooks v. Sulphur Springs Valley Elec. Co., 951 F.2d 1050, 1053 (9th Cir.

2   1991); see also Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54, 116 S. Ct. 1114, 1122 (1996);

3   Puerto Rico Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144, 113 S. Ct. 684,

4   687 (1993).  The State of California has not waived its Eleventh Amendment immunity with

5   respect to claims brought under Section 1983 in federal court.  Dittman v. California, 191 F.3d

6   1020, 1025-26 (9th Cir. 1999).  The Eleventh Amendment bars suits against a state, an arm of the

7   state, its instrumentalities, or its agencies "regardless of the nature of the relief sought."

8   Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 908 (1984); see

9   also Wilbur v. Locke,  423 F.3d 1101, 1111 (9th Cir. 2005); Romano v. Bible, 169 F.3d 1182,

10   1185 (9th Cir. 1999); Franceschi v. Schwartz, 57 F.3d 828, 831 (9th Cir. 1995).

11         When determining whether a state agency is entitled to Eleventh Amendment immunity,

12   the following factors must be examined: (1) whether a money judgment would be satisfied out of

13   state funds, (2) whether the entity performs central governmental functions, (3) whether the entity

14   may sue or be sued, (4) whether the entity has the power to take property in its own name or only

15   the name of the state, and (5) the corporate status of the entity.  Mitchell v. Los Angeles

16   Community College Dist., 861 F.2d 198, 201 (9th Cir. 1989).  The primary factor is whether the

17   money judgment would be satisfied out of state funds.  See Belanger v. Madera Unified School

18   Dist., 963 F.2d 248, 251 (9th Cir.1992).

19         Defendants contend they are entitled to sovereign immunity because the District is an

20   "arm of the state," and Azari and Villa are its official representatives.  Defendant argues that

21   California state colleges and universities are "dependent instrumentalities of the state."  Jackson

22   v. Hayakawa, 682 F.2d 1344, 1350 (9th Cir. 1982).  The District is not a state college or

23   university, but Defendant relies on Mitchell, where the Ninth Circuit held that the Los Angeles

24   Community College District was an "arm of the state."  861 F.2d at 201.  Plaintiff argues the

25   Mitchell Court did not decide the issue as a matter of law, rather it engaged in a factual analysis

26   finding that the district's budget was made up of funds received from the state's general fund

27

28                                                    9

1   pursuant to a state calculated formula, and some fees charged by the district's colleges went to

2   the state.  See id.  However, citing Mitchell, the Ninth Circuit later held that the Eleventh

3   Amendment barred Section 1983 claims against the San Francisco Community College District

4   because "community college districts are dependent instrumentalities of the state of California."

5   Cerrato v. San Francisco Community College Dist. 26 F.3d 968, 972 (9th Cir. 1994); see also

6   Johnson v. Rancho Santiago Community College District, 623 F.3d 1011, 1021 n.4 (9th Cir.

7   2010) ("Absent waiver, the District would be entitled to sovereign immunity because California

8   community college districts constitute arms of the state entitled to sovereign immunity under the

9   Eleventh Amendment."); Lauser v. City College of San Francisco, 359 Fed. Appx. 755, 757 (9th

10  Cir. 2009) ("Thus, any suit against the College, which is a California community college, is

11  barred by the Eleventh Amendment.").  The Ninth Circuit has found waiver of the sovereign

12  immunity defense where a community college district engaged in litigation on the merits,

13  participated in discovery, and filed motions to dismiss and for summary judgment without

14  pressing the sovereign immunity defense.  See Johnson, 623 F.3d at 1022.  Unlike the defendant

15  in Johnson, the District has not waived its sovereign immunity defense.  Accordingly, Plaintiff's

16  claims against the District will be dismissed without leave to amend, because the District is

17  entitled to Eleventh Amendment immunity and therefore "the allegation of other facts consistent

18  with the challenged pleading could not possibly cure the deficiency." Schreiber, 806 F.2d at

19  1401.

20      Defendants argue Azari and Villa are also entitled to Eleventh Amendment immunity, to

21  the extent they are sued in their official capacities.[3]  Individual defendants can fall within the

22  scope of the Eleventh Amendment when they are sued in their official capacities because "a suit

23

24

25      [3] Plaintiff has also sued Azari and Villa in their individual capacities.  A complaint must
    include enough specific factual content to allow the court to reasonably infer that the defendant is
    liable for the conduct alleged.  See Iqbal, 129 S.Ct. at 1949.  The facts alleged in the Complaint
26  do not support a reasonable inference that any of Azari's or Villa's alleged conduct was
    performed in their individual capacities.  The Court will dismiss the claims against Azari and
27  Villa in their individual capacities, without prejudice to amendment.

28                                          10

1   against a state official is not a suit against the official but rather is a suit against the official's

2   office." Will v. Mich. Dept. State Police, 491 U.S. 58, 71 (1989); see also Pena v. Gardner, 976

3   F.2d 469, 473-74 (9th Cir. 1992).  Although state entities are immune from suits that seek either

4   damages or injunctive relief, "state *officers* sued in their official capacities are immune only from

5   suits for retrospective relief." Johnson, 623 F.3d at 1022 n.5 (citing Porter v. Jones, 319 F.3d

6   483, 491 (9th Cir. 2003)).  To the extent Plaintiff has sued Azari and Villa in their official

7   capacities for compensatory and punitive damages, the Eleventh Amendment bars his claims.

8   However, Azari and Villa are not entitled to sovereign immunity from Plaintiff's claims for

9   declaratory and injunctive relief.

10  B.      First Amendment Claims Under 42 U.S.C. § 1983

11          To sustain an action under § 1983, a plaintiff must show (1) that the conduct complained

12  of was committed by a person acting under color of state law; and (2) that the conduct deprived

13  the plaintiff of a constitutional right. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th

14  Cir. 1990).  Plaintiff alleges two § 1983 claims based on First Amendment violations.  First, he

15  contends he was retaliated against for exercising his clearly established right to free speech

16  without retaliation on issues of public concern.  He also contends he was subjected to "viewpoint

17  discrimination" in violation of the First Amendment.  Defendants contend that because Plaintiff

18  spoke while performing his official duties as a professor, his First Amendment claims fail as a

19  matter of law.  Defendants further argue that the reprimand was justified given the disruption

20  caused by Plaintiff's classroom conduct.  Finally, Defendants argue they are entitled to qualified

21  immunity.

22          1.      Retaliation

23

24      As a state community college professor, Plaintiff is a public employee, and the speech at

25  issue here occurred in Plaintiff's classroom.  Academic freedom is "a special concern of the First

26  Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom."

27  Keyishian v. Bd. of Regents of Univ.of State of N. Y., 385 U.S. 589, 603, 87 S.Ct. 675, 683

28                                             11

1   (U.S. 1967).  "The Supreme Court has clearly stated that public employees do not shed their First

2   Amendment rights simply because they are employed by the government."  Huppert v. City of

3   Pittsburg, 574 F.3d 696, 702 (9th Cir. 2009).  The Ninth Circuit has set forth five factors that

4   must be considered in sequence to determine whether a public employee has stated a claim for

5   First Amendment retaliation: "(1) whether the plaintiff spoke on a matter of public concern; (2)

6   whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's

7   protected speech was a substantial or motivating factor in the adverse employment action; (4)

8   whether the state had adequate justification for treating the employee differently from other

9   members of the general public; and (5) whether the state would have taken the adverse action

10  even absent the protected speech."  Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009).  The

11  plaintiff has the burden of proof on the first three steps; the burden shifts to the state to prove the

12  final two steps.  Clairmont v. Sound Mental Health, 632 F.3d 1091, 1103 (9th Cir. 2011)

13      The Court decides as a matter of law whether the employee's speech involved a matter of

14  public concern, based on "the content, form, and context of a given statement, as revealed by the

15  whole record."  See Connick v. Myers, 461 U.S. 138, 148, 103 S.Ct. 1684, 75 L.Ed.2d 708

16  (1983).  As the Supreme Court has held:

17
18      [W]hen a public employee speaks not as a citizen upon matters of public concern, but
        instead as an employee upon matters only of personal interest, absent the most unusual
        circumstances, a federal court is not the appropriate forum in which to review the wisdom
19      of a personnel decision taken by a public agency allegedly in reaction to the employee's
        behavior.
20

21  Connick, 461 U.S. at 147 (1983).  The Supreme Court later made clear that "when public

22  employees make statements pursuant to their official duties, the employees are not speaking as

23  citizens for First Amendment purposes, and the Constitution does not insulate their

24  communications from employer discipline."  Ceballos, 547 U.S. at 421.  Defendants urge the

25  Court to apply the Ceballos analysis and find that because Plaintiff is a public employee and the

26  speech at issue was part of Plaintiff's official duties as a teacher, that speech is not protected by

27  the First Amendment.  Due to special concerns for academic freedom, however, the Ceballos

28                                              12

1    Court specifically declined to decide whether its reasoning "would apply in the same manner to a

2    case involving speech related to scholarship or teaching." Ceballos, 547 U.S. at 425.

3         The Ninth Circuit has applied the Ceballos analysis (the second step of the five-step Eng

4    test) in a case involving a secondary school teacher, noting that the academic freedom carve-out

5    contemplated by Ceballos concerned the applicability of the decision to teachers at "public

6    colleges and universities." Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 966 n.12 (9th

7    Cir. 2011) (citing Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist., 624

8    F.3d 332, 438 (6th Cir. 2010)).  Because both the Supreme Court and the Ninth Circuit have

9    expressed concerns about applying the Ceballos analysis to a teacher in Plaintiff's position, the

10   Court will not apply the second step of the Eng test, which requires Plaintiff to show he spoke as

11   a private citizen and not a public employee.[4]

12        Using this standard, to survive a motion to dismiss, Plaintiff must first show that he

13   "spoke on a matter of public concern." Eng 552 F.3d 1070.  To determine whether speech

14   involves a matter of public concern, the Court must consider "whether speech 'fairly can be said

15   to relate to any matter of political, social, or other concern to the community." Poway Unified,

16   658 F.3d at 965 (quoting Huppert, 574 F.3d at 703). The "first and foremost" consideration is the

17   content of the speech. Clairmont, 632 F.3d at 1103. Plaintiff alleges the speech at issue[5] consists

18

19        [4] Although it did not discuss the five-step Eng test, the U.S. District Court for the

20   Northern District of California declined to apply Ceballos in a case strongly resembling
     Plaintiff's.  See Sheldon v. Dhillon, 2009 WL 4282086 (N.D. Cal. Nov. 25, 2009) (denying

21   motion to dismiss action brought by community college professor alleging retaliation for
     classroom speech regarding homosexuality and heredity).  The Northern District applied the

22   existing Ninth Circuit framework for analyzing a teacher's instructional speech. Id. at *4.  Under
     that standard, a teacher's instructional speech is protected by the First Amendment, and if a

23   defendant acted in retaliation for the teacher's instructional speech, the teacher's rights will have
     been violated unless the defendant's conduct was "reasonably related to legitimate pedagogical

24   concerns." Id. at *4 (citing Cal. Teachers Assn. v. State Bd. of Educ., 271 F.3d 1141, 1149 (9th
     Cir. 2001)).

25
          [5] For purposes of the motion to dismiss, the Court accepts Plaintiff's allegations as true.

26   Plaintiff denies that he claimed homosexuality should be "declared a mental illness," and that
     homosexuals are "abnormal" or "are in need of counseling . . .[and] are degrading society."  He

27   further denies stating "homosexuals are an abomination," "faggots," and "homosexuality is a

28                                                    13

1   of references to selected biblical passages during a lecture on the topic of the role of

2   chromosomes and heredity from a moral perspective; optional assigned homework on the topic

3   of whether Jesus was haploid or diploid; Plaintiff's light-hearted statement "That's right," in

4   response to a student answering "The Father, The Son, and the Holy Spirit," to a question about

5   the DNA transcription process; presentation of statistics on the emotional health of human

6   sexuality, sexually transmitted diseases as it relates to reproduction, and consumer and

7   environmental health and how it affects homosexuality in males and females; and the statement

8   "because over 95% of the population is not homosexual, for those who are 'one alternative is

9   psychological counseling.'" Plaintiff's speech touched on religious and social issues.  These

10  matters are "unquestionably of inherent public concern."  See Poway Unified, 658 F.3d at 966;

11  see also Eng, 552 F.3d at 1070.

12      Because the Court does not apply the second step of the Eng test, the last factor Plaintiff

13  must show to state a claim for First Amendment retaliation is that his protected speech "was a

14  substantial or motivating factor in the adverse employment action." Eng 552 F.3d at 1070.

15  Plaintiff alleges he was formally reprimanded for the speech at issue here.  The Court therefore

16  finds that Plaintiff has stated a claim for First Amendment retaliation.  Defendants contend

17  Plaintiff's claim fails because educational institutions may restrict speech to avoid workplace

18  disruptions and potential Establishment Clause violations, and a college or university has a right

19  to discipline teachers who use in-class commentary to attempt to further their personal religious

20  beliefs. These arguments go to the remaining factors for which Defendants bear the burden of

21  proof - whether Defendants had  "adequate justification" for its treatment of Plaintiff and

22  whether they would have reprimanded him "even absent the protected speech."  These are factual

23  issues not readily determined at the pleadings stage.  To the extent Defendants reprimanded

24  Plaintiff because of his classroom speech, and assuming there was no adequate justification and

25  that Defendants would not have reprimanded him absent the speech, then he has stated a claim

26  _____

27  sin."

28                                                    14

for relief under 42 U.S.C. § 1983.  Therefore, the motion to dismiss the Complaint is denied as to Count I.

### 2.   Viewpoint Discrimination

Plaintiff's second First Amendment claim contends that Defendants violated Plaintiff's "right to have a viewpoint."  Plaintiff alleges the application of the District's harassment policy continues to censure Plaintiff's speech because he is still under the disciplinary restrictions set forth in the reprimand letter.  In effect, Plaintiff alleges a continuance of the facts alleged in his retaliation claim.  Thus, for the same reasons stated in the retaliation analysis, Defendants' motion to dismiss is denied as to Count II.

### 3.   Qualified Immunity

Defendants next argue that Azari and Villa are entitled to qualified immunity.  The defense of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief."  American Fire, Theft & Collision Managers, Inc. v. Gillespie, 932 F.2d 816, 818 (9th Cir. 1991) (quoting Presbyterian Church (U.S.A.) v. United States, 870 F.2d 518, 527 (9th Cir.1989)).  The Court finds Plaintiff has failed to state a claim against Azari and Villa in their individual capacities, and the Eleventh Amendment bars damages claims against Azari and Villa in their official capacities.  Because the only claims remaining against Azari and Villa are for declaratory and injunctive relief, they are not entitled to qualified immunity.

## B.   Fourteenth Amendment Due Process Claim Under 42 U.S.C. § 1983

In Count III, Plaintiff appears to advance a procedural, rather than a substantive, due process claim under § 1983.  A procedural due process claim requires a showing of: "(1) a

15

1   deprivation of a constitutionally protected liberty or property interest; and (2) a denial of

2   adequate procedural protections" by a state actor.  Brewster v. Board of Educ., 149 F.3d 971, 982

3   (9th Cir. 1998).  Plaintiff alleges Defendants failed to provide Plaintiff with due process of law

4   under the Fourteenth Amendment when it deprived Plaintiff of his constitutionally protected

5   liberty interest in his rights of freedom of speech and expression, and further deprived him of a

6   property interest in his job.   Defendants move to dismiss, arguing that (1) the alleged "liberty of

7   speech" interest is not protected under the due process clause; (2) Plaintiff had no property

8   interest in utilizing the Bible to teach health or to inject personal opinions regarding

9   homosexuality, couched as statistics, into the classroom; and (3) Plaintiff was provided adequate

10   process in the investigation of the student grievances.

11         To allege a property interest, a plaintiff "must have more than an abstract need or desire

12   for it ... a person must have a legitimate claim of entitlement to it."  Board of Regents of State

13   Colleges v. Roth, 408 U.S. 564 (1972).  Plaintiff's argument that he was deprived of a

14   constitutionally protected property interest when Defendants made him "decide between his

15   rights and his job," is unavailing.  Plaintiff alleges the District "threatened to terminate him" if he

16   did not "cease teaching religious materials and assigning readings from the Bible or other

17   religious texts in class or otherwise relying on the Bible as an authority in the assigned matter."

18   Plaintiff concedes the reprimand gave him ninety (90) days to change his "unsatisfactory

19   conduct" before the District would institute "disciplinary proceedings."  From the face of the

20   Complaint, it appears no such disciplinary proceedings were instituted.  Plaintiff was

21   reprimanded, not terminated, thus any alleged property interest in his employment was not

22   affected.  See Roth, 408 U.S. at 574 n.13.  However, "[w]hen Congress enacted the Fourteenth

23   Amendment, it enshrined a concept of liberty that has been understood to include the 'general

24   principle of free speech.' . .. Since then, the Fourteenth Amendment has consistently been held to

25   incorporate the First  Amendment's protection of free speech and academic freedom against the

26   states."  Rodriguez v. Maricopa County Community College Dist., 605 F.3d 703 (9th Cir. 2010).

27

28                                          16

Accepting as true Plaintiff's allegations that he was reprimanded based on his free speech activities, Plaintiff has stated a claim for First Amendment retaliation.  Thus, Plaintiff has alleged facts tending to show a deprivation of his liberty interest in free speech.

Due process requires "that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 543, 105 S. Ct. 1487, 1493 (1985) (quoting Mullane v. Central Hanover Bank & Turst Co., 339 U.S. 306, 313, 70 S. Ct. 652, 656 (1950)).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191 (1965)).  Plaintiff alleges the District's grievance procedures were not followed, he was not permitted to review documents supporting student allegations, he was not permitted time to seek counsel, and he was not afforded a hearing before being formally reprimanded.  Thus, Plaintiff has pleaded sufficient facts to support a plausible claim for relief under the Due Process Clause, and Defendants' motion to dismiss will be denied as to Count III.  Defendants are not entitled to qualified immunity, for the reasons stated in the retaliation analysis above.

C.    Violation of Plaintiff's Rights to Academic Freedom Under District Administrative
      Regulation 4030 and 5 C.C.R. § 53200

Count IV of the Complaint alleges Defendants' actions violated FCC's policy on academic freedom, District Administrative Regulation 4030, which is based on the Free Speech Clause of the First Amendment. Specifically, Plaintiff contends the actions of  Defendants Azari and Villa were calculated to violate Plaintiff's rights to academic freedom and, by extension, his rights to free speech.  Plaintiff further alleges those actions violated Plaintiff's right as an instructor to discuss pertinent subjects within his field of professional competency in the classroom, consistent with course objectives. Count V alleges Defendants' actions violated 5 C.C.R. § 53200, which provides definitions related to the academic senates at California community colleges.  Plaintiff alleges the District adopted the statewide Academic Senate guide

17

on critical thinking, which mandates that professors include "critical thinking" within the class

syllabus.  Plaintiff alleges his personnel file was "tarnished" and he was disciplined because he

complied with the District's policy on critical thinking.

To the extent Counts IV and V allege First Amendment violations, they are duplicative of

and subsumed under Plaintiff's First Amendment retaliation and viewpoint discrimination

claims.  In opposition to Defendants' motion, Plaintiff argues these claims are based upon the

right of free speech contained in California Constitution, Art. 1, § 2, which supports a separate

cause of action for declaratory or injunctive relief.  The face of the Complaint, however, bears no

mention of the California Constitution.  The Court will grant Plaintiff leave to amend these

claims to allege a violation of the California Constitution.  To the extent Plaintiff seeks redress

directly under Administrative Regulation 4030 and 5 C.C.R. § 53200, however, he has failed to

state a claim.  Under California law, "[a] violation of a state statute does not necessarily give rise

to a private cause of action."  Lu v. Hawaiian Gardens Casino, Inc., 50 Cal. 4th 592, 596, 226

P.3d 346, 348 (Cal. 2010).  "Instead, whether a party has a right to sue depends on whether the

Legislature has 'manifested an intent to create such a private cause of action' under the statute."

Id. (quoting Moradi-Shalal v. Fireman's Fund Ins. Companies, 46 Cal.3d 287, 305, 758 P.2d 58

(Cal. 1988)).  Where, as here, the statutory provision or policy contains no remedy or penalty for

violation, there "is a strong indication that such a right was not intended."  Rosales v. City of Los

Angeles, 82 Cal.App.4th 419, 428 (Cal. 2000).  The Court will therefore grant Defendants'

motion to dismiss Counts IV and V.

D.      Administrative Regulation 3430

In Count VI, Plaintiff alleges that Administrative Regulation 3430, the District's

prohibition of harassment policy, is unconstitutional as applied "because any third party, present

in class who is offended at comments not directed at them or anyone they know in class can

require, without providing proof of their allegations, an instructor to be sanctioned because of

sexual or environmental harassment," and because "any third party not even present in class and

18

1    who is offended by hearsay statements allegedly directed against other persons, can subject an

2    instructor to employment sanctions and censorship." Plaintiff further claims Administrative

3    Regulation 3430 is unconstitutional on its face because "it gives regulations greater weight than

4    the academic freedom recognized under the First Amendment," "it makes a third party judge of

5    whether or not speech is harassment thereby exposing instructors to a 'heckler's veto,'" and

6    "because it trumps rights under the First Amendment." Based on the heading of Count VI, it

7    appears these allegations form the basis for Plaintiff's claim that Administrative Regulation 3430

8    violates the Due Process Clause of the Fourteenth Amendment. The Court finds that the

9    conclusory and largely speculative allegations in Count VI fail to state a plausible facial or as-

10   applied constitutional challenge to Administrative Regulation 3430. Thus, the Court will grant

11   Defendants' motion to dismiss Count VI.

12                               **CONCLUSION AND ORDER**

13        Accordingly, the court ORDERS that:

14        1.    Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART;

15        2.    All claims against Defendant State Center Community College District,

16              erroneously sued as Fresno City College, are DISMISSED with prejudice;

17        3.    All claims against Defendants Azari and Villa in their individual capacities are

18              DISMISSED with leave to amend for the limited purpose of alleging with greater

19              specificity the particular conduct Plaintiff contends was performed in Defendant

20              Azari's and Defendant Villa's individual capacities;

21        4.    All claims for compensatory and punitive damages against Defendants Azari and

22              Villa in their official capacities are DISMISSED with prejudice;

23        5.    Defendants' motion to dismiss Counts I, II, and III is DENIED;

24        6.    Defendants' motion to dismiss Counts IV, V, and VI is GRANTED with leave to

25              amend;

26        7.    Any amended complaint SHALL BE FILED within twenty (20) days of service of

27

28                                          19

this order; and

8.   If Plaintiff fails to file a timely amended complaint, Defendants shall file an answer within thirty (30) days of service of this order.

IT IS SO ORDERED.

Dated:   March 12, 2012

_____
CHIEF UNITED STATES DISTRICT JUDGE

20